## BARNHART MERCANTILE CO. v.
### BENGEL.
### No. 11564.

Court of Civil Appeals of Texas. Dallas.
Nov. 17, 1934.

Alexander Gullett, of Denison, for appellant.

Finley, Wolfe & Barron, of Sherman, for appellee.

BOND, Justice.

Appellee, C. W. Bengel, instituted this suit in a district court of Grayson county against Barnhart Mercantile Company, a corporation, for debt in the sum of $2,090, alleged to be due him for the preparation of plans and specifications for the construction of two buildings.

The appellee, in his petition, alleges that, at the special instance and request of the Barnhart Mercantile Company, acting through its agent and local manager, George O. Morgan, he prepared and presented to the company plans, specifications, and estimates of cost for the company to be used in the erection of a mill building and warehouse building in the city of Denison, Tex., for which the company agreed to pay him the usual and customary architect fee of 3 per cent. of the construction cost, and that the company accepted the plans, specifications, and estimates so made, and used them in the construction of the buildings, for which it is due on the contract the fee, less a payment of $100.

The appellant's answer controverts appellee's petition generally, and specially denies that it did not employ the plaintiff as an architect to prepare plans, specifications, and estimates of cost for the construction of the buildings; that the plans and specifications which were prepared and presented by the plaintiff were made without the authority of the company; and that the plaintiff voluntarily made the plans and specifications, and, after being so made, an agreement was entered into by the plaintiff and defendant to the effect that, if they were used in the construction of the buildings, the company would pay the plaintiff a reasonable compensation for his services, not to exceed the sum of 1 per cent. of $40,000, provided the plans and specifications were suitable for the construction of the buildings it desired to erect. Appellant further alleged that, after the construction had been commenced, an attempt was made by it to use the plans and specifications, but, on account of their vagueness and uncertainty, they were found inadequate, unusable, and utterly worthless to the company, and were never used in the construction of its buildings.

The case was submitted to a jury, and in response to special issues it found: (1) That the plaintiff, at the special instance and request of the Barnhart Mercantile Company,

acting by and through its agent, George O. Morgan, prepared plans and specifications for a mill building and warehouse building which the defendant contemplated erecting in Denison, Tex.; (2) that the plans and specifications were delivered, accepted, and used by the Barnhart Mercantile Company for the erection of the buildings; (3) that $2,040 is the reasonable worth of the services rendered by the plaintiff in preparing the plans and specifications—$1,050 for the mill building and $990 for the warehouse building; (4) that the cost of erection of the mill building was $35,000, and the warehouse building, $2,900; and (5) that the plans and specifications were not voluntarily prepared nor permitted to be used by the defendant under an agreement that, if used, the plaintiff would accept a reasonable amount not to exceed the sum of 1 per cent. of the cost of construction of the buildings.

On appellee's motion, the court, on the findings of the jury, entered judgment in his favor for the sum of $1,940. The basis for the amount is the finding by the jury that the worth of appellee's services in preparing the plans, specifications, and estimates of cost of construction for the buildings is $2,040, and less a payment, conceded by the parties to have been paid, of $100.

By its first proposition, appellant contends that the court erred in rendering judgment for the amount of $1,940. The premises for this contention are that the judgment does not conform to the pleadings nor to the verdict of the jury on the material issues as to the cost of construction.

The measure of recovery, as shown in appellee's petition, is based upon an alleged contract which he claims was entered into with appellant to "pay him (appellee) for his said services, as the architect, in preparing said plans, specifications and estimates of cost the usual and customary fee of an architect for said services of three per cent (3%) of the cost of the erection and construction of said buildings, which fee plaintiff alleges is reasonable. * * *" This was a disputed issue raised in both pleadings and evidence. Obviously, the jury determined this controversy by a finding that the contract was made and that the cost of construction of the two buildings was $37,900; therefore, by this means, the court was bound to ascertain the amount of recovery, which evidently was not done, thus the amount of the judgment as rendered finds no support in the pleadings and findings of the jury. Here is the vital conflict shown in the record: Appel-

lee pleading a specific contract for the appellant to pay 3 per cent. of the cost of construction of the two buildings, the jury finding the cost of construction to be the sum of $37,900, and the court rendering judgment for $2,040—more than 5% of the cost found by the jury. To merely state the situation is, we think, sufficient to disclose an irreconcilable vice pertaining to the power of the court in rendering judgment in excess of $1,137, less the $100 conceded by the parties to have been paid.

■ In this state, a court may ignore findings of a jury upon immaterial issues, and in modern practice it may find facts on issues neither submitted, nor sought to be submitted, to a jury, and may render judgment non obstante veredicto. But in all cases the judgment of the court shall conform to the pleadings, the nature of the case proved, and, where the right of trial by jury is given effect, the verdict of the jury on material issues.

■ By its second proposition, appellant contends that appellee's attorney, in argument before the jury, used language not warranted by any evidence, inflammatory and prejudicial to appellee, in that the remarks were calculated to, and probably did, induce the jury to render an excessive verdict, and which is reflected in the findings. It appears that during the argument the attorney used this language: "I do not know why they did not want us to know how much they were incorporated for." On cross-examination of appellant's agent and local manager, the attorney asked him, "What are you (the company) capitalized at?" to which appellant objected and was sustained by the trial court. Obviously, this should have ended the matter. It is regrettable that in the trial of causes, where a trial judge bends every effort to accord litigants a fair and legal trial, as did the trial judge in this case, attorneys will go out of the record and over the rulings of the court in their desire to get before a jury irrelevant and immaterial matters which may, and ofttimes do, cause errors to appear in the record to cause reversals which could have been so easily avoided. A verdict alone is not the end to reach in a lawsuit. Irrelevant, prejudicial, and inflammatory matters used in speech are not argument, have no place in orderly trial of causes, and should never be indulged in by attorneys in an effort to secure favorable findings by a court or jury.

Another assignment of error is predicated on further remarks of counsel in the same argument, in which he used the following language: "The stuff was given to them by the Chamber of Commerce. Somebody said that the rich get richer and the poor go some place. I said that this bears it out. Corporations are getting enormous sums for material that they testify in evidence here was used in that building."

■■ In view of the record, we are persuaded in holding that the remarks referred to in both instances were improper, and, as the court expressly instructed the jury not to consider the first recited remark and the other seems to be harmless, we fail to perceive how such could in any manner affect or even tend to prejudice or inflame the minds of the jury against the company. While the remarks were without proof to support them and very improper in the argument, we do not think they show probable harm. Upon a careful consideration of the evidence, we are of the opinion that the verdict of the jury, on the amount of the cost of construction of the buildings, was favorable to appellant's contention, urged both in its pleading and evidence; therefore we find that the jury evidently was not prejudiced by the remarks, or the findings of the jury on which the judgment of the court should have been based are so excessive as to require a reversal on the remarks.

■ Another assignment is predicated on the failure of the court to define the word "accepted," used in the court's charge in submitting to the jury the issue as to whether the plans and specifications prepared by appellee were delivered and "accepted" by the company. We are of the opinion that the word "accepted" in reference to technical designs, drawings, and blueprints of architects in the construction of contemplated buildings of which the details must necessarily enter into the agreement implies more than the mere physical "taking," "receiving," or "acknowledging receipt of" (Webster), such designs. It is invariably the case that the laity is not familiar with the technique of architects' plans and specifications, skilled in the art, and ofttimes the architect himself is obliged to draft and redraft his designs, make changes and alterations to meet the expressed notion of his employer and the venture contemplated. Neither party knows in advance of employment the exactness or the details of the work to be done; the work necessarily must be brought to a definite and permanent form to the end where the builder is in accord with the plans and specifications thus made, and the plans and specifications

must be so drafted as to be sufficient to carry into effect the contemplated venture. If an architect's designs be insufficient for the purposes intended and the builder not in agreement with the work, the mere delivery and the physical receipt of it is not in law an acceptance; however, be that as it may, in view of the further issues submitted to the jury as to whether the plans and specifications were delivered and used by the company, and the affirmative findings thereon, we reach the conclusion that the failure of the court to define the word "accepted" becomes immaterial, and no harm was done appellant on account of the failure to define the word applicable to the situation here. If the plans and specifications were delivered, accepted, and used by appellant in the construction of the buildings, then any failure to define the word "accepted," touching the technique of the designs other than the ordinary meaning of the word, becomes harmless.

For the reasons noted, the judgment of the lower court is reversed, with the privilege of the appellee within 15 days, if he so desires, to file in this court a remittitur of $903, and, if so done, the judgment will be reformed so as to allow appellee to recover only $1,037, with interest from this date at appellee's cost, and, as thus reformed, will be affirmed, otherwise remanded.